UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Charlene M. Johnson,                         Civil No. 01-915 (DWF/AJB)

        Plaintiff,

v.                                               **MEMORANDUM**
                                              **OPINION AND ORDER**
Moundsvista, Inc., a Minnesota corporation,
a/k/a Mermaid, Inc., a/k/a Mermaid Supper
Club,

        Defendant.

---

Sonja Dunnwald Peterson, Esq., Dunnwald & Peterson, 412 South Fourth Street, Suite 1150E, Minneapolis, MN 55415, counsel for Plaintiff.

Robert J. Hajek, Esq., and Roger Edward Meyer, Esq., Warchol Berndt & Hajek, Suite 110, 3433 Broadway Street Northeast, Minneapolis, MN 55413, counsel for Defendant.

---

**Introduction**

The above-entitled matter came on for hearing before the undersigned United States District Judge on July 19, 2002, pursuant to Plaintiff's Motion for Summary Judgment, Defendant's Motion for Summary Judgment, Defendant's Motion to Strike Plaintiff's Motion as Untimely, and Defendant's Motion to Strike the Affidavit of Kari Engel and to Disqualify Plaintiff's Attorney. In the Complaint, Plaintiff alleges violations of the Americans with Disabilities Act ("ADA"), the Minnesota Human Rights Act ("MHRA"), the Family and Medical Leave Act ("FMLA"), intentional infliction of emotional distress, and negligence per se.[1] For the

---

[1] In responsive pleadings relating to the instant motion, the Plaintiff has indicated her intent to dismiss voluntarily her tort claims for intentional infliction of emotional distress and negligence per se.

FILED _____
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD_____
DEPUTY CLERK_____

reasons set forth below, Defendant's motion for summary judgment is granted in part and denied in part; Plaintiff's motion for summary judgment is denied; Defendant's motion to strike Plaintiff's motion is denied; and Defendant's motion to strike or disqualify counsel is granted in part and denied in part.

## Background

Plaintiff Charlene Johnson ("Johnson") began working for Defendant Moundsvista, Inc. ("the Mermaid") in November of 1999. She worked as a waitress for the Mermaid until she was terminated on May 4, 2001.

During the tenure of her employment, Johnson was in possession of the Mermaid's employee handbook. Under the terms of the written policies contained in the handbook, employees who needed sick leave were required to give six hours notice prior to any scheduled shift so that management could find a substitute worker. Although Johnson was on notice of the Mermaid's internal policy, it is undisputed that the Mermaid failed to post a notice outlining its employees' FMLA rights, including the right to unpaid leave for personal medical care.

In July of 2000, Johnson was diagnosed with Hepatitis C, a condition which causes her to experience intermittent episodes of severe stomach pain, diarrhea, and fatigue; the condition may ultimately lead to cirrhosis of the liver and/or liver cancer. In August of 2000, Johnson informed management at the Mermaid of her condition. She notified management that her attacks could be sudden and severe and that she would require occasional sick leave to recover from these attacks.

Between the time she notified the Mermaid of her medical condition and the date of her termination, Johnson missed at least nine scheduled shifts because of her hepatitis. Johnson concedes that, on at least several of those occasions, she was unable to provide six hours notice because the attack of symptoms would be so abrupt.

On March 20, 2001, Johnson suffered an attack of symptoms in the middle of a lunch shift. She informed another waitress working the floor with her that she needed to leave because of her hepatitis.[2] She also informed management, and she was given permission to leave.

The other waitress, Shawna Clark, apparently then informed still other employees of Johnson's condition by asking if they were aware of it and inquiring about the possibility of contagion.

Later that day, the Mermaid's owner, Dan Hall, held a meeting of the four wait staff who had worked the shift with Johnson as well as three of the Mermaid's managers. It is unclear how many of the meeting attendees already knew about Johnson's medical condition, but there is at least a possibility that at least one of the wait staff had not yet learned of Johnson's hepatitis diagnosis. At the meeting, Hall told the staff that Johnson suffered from Hepatitis C and informed them that, under Minnesota regulations, Johnson was legally permitted to work in the food service industry. He further informed them that Hepatitis C can only be contracted through blood-to-blood contact.

Johnson alleges that, in early April of 2001, Hall asked Johnson when she was going to begin certain medical treatments. The record does not indicate that he mentioned that the treatments were for Hepatitis C, only that they were "treatments" of some sort. Hall allegedly made his inquiry loudly and in the presence of a number of dishwashing staff.

---

[2] The circumstances of this communication are in dispute. Johnson alleges that she told the other waitress, Shawna Clark, because Clark was a friend who already knew about Johnson's condition. Johnson further alleges that she whispered the information to Clark so that no other employee or patron could hear what she said. Clark, on the other hand, has testified that she did not know of Johnson's hepatitis prior to this incident; that learning of Johnson's condition alarmed Clark, who was pregnant at the time and unsure whether Johnson's condition would put Clark's child at risk; and that Johnson announced the fact of her hepatitis loudly enough that restaurant patrons could hear her.

3

In mid-April of 2001, the Mermaid allegedly reduced Johnson's hours, having her work the shorter lunch shift from 11 to 3 rather than the longer lunch shift from 11 to 5. The Mermaid placed Johnson on the shorter shifts so that it would be easier to replace her if and when she called in sick. The Mermaid alleges that it planned to maintain Johnson's weekly hours by scheduling her for some evening hours as well. The record creates an issue of fact with respect to whether Johnson's overall hours were actually reduced in the three weeks between the announced scheduling change and Johnson's termination and with respect to whether any reduction in hours was a result of the change in scheduling or a result of Johnson's sick leave.

Johnson alleges that the Mermaid retaliated against her by imposing two unwarranted disciplinary actions. First, on April 21, 2001, Johnson contacted the Mermaid at 6:25 a.m. to inform them that she was having car trouble and would be unable to come to work. Johnson asserts that the woman who answered the phone that morning promised to try to find a substitute for Johnson and to inform management of Johnson's situation. The Mermaid issued Johnson a written warning for missing work that day. Second, on April 23, 2001, Johnson received another write-up for non-coverage of a shift. Johnson was not scheduled to work that day, but a manager had asked her to substitute for another employee; Johnson discovered she had a conflict, and left a note on the office door stating that she would not be able to cover the shift.

Johnson's attorney contacted the Mermaid and informed them that they were illegally retaliating against her client.

Johnson alleges that, on April 27, 2001, she checked the schedule for the week of April 29 through May 5. Johnson alleges that she was scheduled to work the evening shift on May 4 and the lunch shift on May 5.

4

At some point after Johnson checked the schedule, the Mermaid apparently changed the schedule so that Johnson was scheduled to work the dinner shift on May 3, the lunch shift on May 4, and the dinner shift on May 5. Johnson was not aware of the change.

Johnson called the Mermaid in the early afternoon of May 4 to inform them that she was going to be late for her dinner shift that evening.[3] Johnson asserts that the manager she spoke with asked if she would be coming in on May 5, and, when Johnson said "yes," she told Johnson not to bother coming in at all on the 4th. Johnson apparently arrived to pick up her check on May 5 and was handed a termination notice; the stated reason for her termination was her failure to show up for work on the 3rd and the 4th.

## Discussion

1. **Motion to Strike**

The Mermaid has brought a motion to strike the Affidavit of Kari Engel. Ms. Engel was a law clerk for the firm representing Johnson. On May 10, 2001, Ms. Engel interviewed a Mermaid waitress named Pam Nadon. Nadon apparently told Ms. Engel that she, too, experienced shift changes on the schedule for the week of April 29, 2001, through May 5, 2001. Ms. Nadon passed away in January of 2002. The Affidavit of Ms. Engel, to which the Mermaid takes exception, contains the substance of Ms. Nadon's remarks to Ms. Engel during the interview.

The purported statements by Ms. Nadon contained in the Affidavit of Kari Engel are hearsay. Moreover, there is no allegation that the interview between Ms. Engel and Ms. Nadon took place under oath, so the hearsay exception contained in Rule 804(b)(1) does not apply.

---

[3] Of course, if Johnson was actually scheduled to work the lunch shift, she was already quite late and would, in fact, miss the shift entirely.

5

Johnson nevertheless contends that the Affidavit is admissible pursuant to the residual exception contained in Rule 807.

Rule 807 allows admission of statements which have "circumstantial guarantees of trustworthiness" equivalent to those provided for in the more specifically enumerated exceptions. If such circumstantial guarantees of trustworthiness exist, the Court may admit the statement if it determines that the statement is offered as evidence of a material fact, that the statement is the most probative evidence that the proponent can procure through reasonable efforts, and that the purpose of the Rules of Evidence and the interests of justice will best be served by admitting the statement.

The statements of Ms. Nadon, contained in the Affidavit of Kari Engels, are not admissible pursuant to Rule 807. Assuming, as Johnson argues, that Ms. Engels' skill in conducting interviews and her own reliability constitute the "circumstantial guarantees of trustworthiness"[4] required by Rule 807, the statement is still inadmissible because it is not the most probative evidence that Johnson can procure on the issue of the alleged schedule change. First, Johnson herself has testified about the schedule change and asserts that she has documentary evidence to support her testimony. Moreover, Ms. Nadon was not the only waitress

---

[4] The Court notes that guarantees of trustworthiness described in Rule 807 are aimed at ensuring that the person who originally uttered the statement–here, Ms. Nadon–did so under circumstances such that she was unlikely to lie or shade the truth in any way, not at ensuring that the affiant reporting the statement–here, Ms. Engels–is accurately reporting what she was told. The Court has no reason to believe that Ms. Nadon would lie about anything, much less something as innocuous as her work schedule, and does not mean to suggest that Ms. Nadon's veracity is somehow suspect. However, the Court must have more than simple faith in the trustworthiness of most people; the Court must have evidence that the external circumstances in which the statement were made provide some guarantee of the statement's truth.

scheduled to work the week in question; other wait staff who are available for cross-examination could be called to testify as to any alleged shift changes.

Although the Court rules that the Affidavit of Kari Engels is inadmissible, the Court notes that its decisions on the remaining motions are unaffected by this ruling. Because the purported statement by Ms. Nadon merely supports Johnson's own testimony, the exclusion of Nadon's statement does not change the outcome of any summary judgment motion.

The Court further notes that, because the Court has determined that the Affidavit of Kari Engels is inadmissible, the Mermaid's motion to disqualify counsel is rendered moot.

## 2.   Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations

or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

### 3.     Disability Discrimination

Johnson alleges that the Mermaid discriminated against her in violation of the ADA and the MHRA when it reduced her hours, terminated her, and disclosed her medical condition to her coworkers. Johnson further alleges that the reduction in hours and termination were retaliatory actions taken by the Mermaid because Johnson complained of other discriminatory conduct, in part by having her attorney send the Mermaid a letter advising them of Johnson's legal rights.

#### a.     Reduction in Hours and Termination

The ADA prohibits discrimination against a "qualified individual with a disability." 42 U.S.C. § 12112(a). The Mermaid argues, persuasively, that Johnson is not a qualified individual with a disability because, either with or without a reasonable accommodation, she cannot satisfy the essential job requirement of attendance.

"[R]egular and reliable attendance is a necessary element of most jobs. Moreover, an employee who is unable to come to work on a regular basis [is] unable to satisfy any of the functions of the job in question, much less the essential ones." *Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847, 849 (8th Cir. 2002) (citations and quotations omitted, second alteration in the original). The Mermaid asserts that regular and reliable attendance is an essential element of the job of waiting tables; the Mermaid's position comports with common sense; and Johnson has not disputed that regular and reliable attendance was an essential function of her job. It is further undisputed that one unfortunate aspect of Johnson's medical condition is that it renders her incapable of regularly and reliably showing up for her job. Accordingly,

8

Johnson does not fall within the scope of the ADA's or the MHRA's protection against disability discrimination because she is not a qualified individual with a disability.

### b.   Disclosure of Confidential Information

Under the ADA, Johnson may maintain her cause of action for unauthorized disclosure of confidential medical information even though she is not a "qualified individual with a disability." *See Cossette v. Minnesota Power & Light*, 188 F.3d 964 (8th Cir. 1999) (ADA protects employee from unauthorized disclosure of medical information regardless of whether employee is disabled). However, to sustain a claim under the ADA, Johnson must not simply allege that the Mermaid improperly disclosed medical information, but also that Johnson experienced some sort of "tangible injury" as a result of that disclosure. *Id.* at 970. In *Cossette*, 188 F.3d at 971, the Eighth Circuit indicated, without definitively determining, that "being treated in a condescending and patronizing manner" by one's coworkers would fall short of the type of adverse employment action necessary to maintain a claim under the ADA. Here, the Court need not address whether rude treatment by coworkers could ever constitute a "tangible injury" sufficient to support a claim for improper disclosure under the ADA; Johnson does not allege that she was treated at all differently by her coworkers after the alleged disclosure. In short, Johnson has not alleged the sort of "tangible injury" necessary to support a claim under the ADA.

With respect to Johnson's claim for disclosure of confidential information in violation of the MHRA, Minnesota case law dictates that Johnson lacks standing to pursue such a claim. In *State by Cooper v. Hennepin County*, 425 N.W.2d 278 (Minn. Ct. App. 1988) (aff'd 441 N.W.2d 106), the Minnesota Court of Appeals held that an individual could not bring a cause of action under the medical information confidentiality provisions of the MHRA unless the person fell within the protected class of the statute, namely qualified individuals with disabilities. Thus, in

9

contrast to the Eighth Circuit's interpretation of the ADA, the Minnesota courts have held that a person seeking to bring any cause of action under the MHRA's disability discrimination provision must be a qualified individual with a disability.[5] Because, as discussed above, Johnson does not fall within the protected class, Johnson's claim must fail.

However, even if Johnson could state a cause of action under the MHRA without establishing that she falls within the protected class, her MHRA claim would fail for the same reason her ADA claim fails: she has not alleged any tangible injury resulting from the allegedly improper disclosure of her medical information.

c.  **Retaliation**

A plaintiff may bring a claim for retaliation under the ADA even where the plaintiff is not a qualified individual with a disability. *See Krouse v. American Sterilizer Co.*, 126 F.3d 494, 502 (3rd Cir. 1997). To state a claim for retaliation under the ADA, a plaintiff must demonstrate that she engaged in protected conduct by opposing illegal discrimination, that her employer took some adverse employment action against her, and that there is a causal nexus between her protected conduct and the adverse employment action. *Id.*

Here, Johnson told the Mermaid that she believed its conduct in reducing her hours was discriminatory, and Johnson's attorney notified the Mermaid that the reduction in hours and the

---

[5]  Johnson relies upon *Huisenga v. Opus Corp.*, 494 N.W.2d 469 (Minn. 1992), to support her contention that the confidentiality provision of the MHRA creates a right of action even for people who are not within the protected class. Johnson's reasons strain the rationale of *Huisenga*. In *Huisenga*, the Minnesota Supreme Court held that an employer could not defend against a workers' compensation claim by relying upon the fact that the employee falsely answered questions during a pre-employment medical exam which violated the MHRA. The court did not hold that the employee subjected to that illegal exam could bring a separate cause of action based upon having to take the exam. Given the more apposite holding in *State by Cooper*, the Court cannot read *Huisenga* to have the broad meaning Johnson would give it.

10

write-ups for nonattendance were discriminatory. It is uncontroverted that the Mermaid terminated Johnson's employment, and there is a genuine issue of material fact with respect to whether the Mermaid reduced Johnson's hours. Moreover, there is a genuine issue of material fact regarding whether the adverse employment action taken by the Mermaid was in retaliation for Johnson's assertion of her rights.

The Mermaid asserts that Johnson's numerous absences, both because of her condition and otherwise, constitute a legitimate non-discriminatory reason for Johnson's discharge. However, Johnson has offered evidence from which a fact-finder could conclude that this legitimate reason for her discharge was merely pretextual. Specifically, Johnson asserts that other employees of the Mermaid, with similar or worse attendance records, were not discharged.

Accordingly, summary judgment on Johnson's retaliation claims is inappropriate at this time.

### 4. Family and Medical Leave Act

Johnson alleges that the Mermaid violated the FMLA by reducing her hours and ultimately terminating her because of her absences and by disclosing her confidential medical information.

#### a. Reduction of Hours and Termination

At least for purposes of the instant motions, the Mermaid does not dispute that Johnson's Hepatitis C constitutes a "serious health condition" such that she was entitled to the protection of the FMLA. *See* 29 U.S.C. § 2611(11); 29 C.F.R. § 825.114. Accordingly, any leave Johnson took for her Hepatitis C was protected under the FMLA provided that Johnson gave the Mermaid adequate notice and informed them generally that her anticipated absence was due to a serious

11

health condition.[6] *See Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d at 851-853. To the extent that Johnson's absences were protected by the FMLA, the Mermaid was prohibited from penalizing her in any way for taking them, either by reducing her hours or by terminating her. The Court notes, however, that the FMLA does not prohibit disciplinary action based on absences if the absences are taken for reasons other than those enumerated in the Act. *See Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001).

In the case before the Court, there is a genuine issue of material fact, precluding summary judgment in favor of either party, regarding the issue of the adequacy of Johnson's notice to the Mermaid. When, as here, the need for leave is not foreseeable, an employee still must give as much advance notice to his or her employer as is practicable.[7] *See Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d at 851-853. The question of sufficiency of notice depends

---

[6] This case presents another interesting issue which was not briefed by either party: given that Johnson's intermittent need for leave was expected to extend indefinitely and given the job requirement of her attendance, can Johnson obtain protection under the FMLA for her absences. In *Spangler*, the Eighth Circuit noted that "the FMLA does not provide an employee suffering from [a serious health condition] with a right to 'unscheduled and unpredictable, but cumulatively substantial, absences' or a right to 'take unscheduled leave at a moment's notice for the rest of her career.'" 278 F.3d at 853 (quoting *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1007 (7th Cir. 2001)). Neither the *Spangler* nor the *Collins* courts determined when the need for unpredictable leave so undermined an employee's ability to perform her job that the FMLA no longer provided protection, and the Court doubts that this is the appropriate case in which to tackle this interesting issue, particularly given that neither party has explicitly addressed it. Nevertheless, the specter of this issue hangs over the Court's decision, and the Court considers it worth noting.

[7] The Court notes that an employer who fails to follow the FMLA posting requirements, as the Mermaid is alleged to have done, is estopped from challenging the adequacy of an employee's notice. *See* 29 C.F.R. § 825.300(b). However, this estoppel applies only to situations where the employee is required by statute to provide advance notice, *i.e.*, where the need for leave is foreseeable. The estoppel argument is inapplicable when the issue is adequacy of notice for unforeseeable leave. *See Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973 (5th Cir. 1998); *Gay v. Gilman Paper Co.*, 125 F.3d 1432 (11th Cir. 1997).

CASE 0:01-cv-00915-DWF-AJB   Document 60   Filed 08/28/02   Page 13 of 15

upon the facts and circumstances of the case and is often not amenable to summary judgment. *See id.*

Moreover, the record creates a genuine issue of material fact with respect to whether Johnson's hours were reduced in April of 2001 and to whether her termination was the result of her FMLA leave or her other non-FMLA absences. Accordingly, summary judgment in favor of either party would be inappropriate.

### b. Disclosure of Confidential Information

Section 825.500(g) of Chapter 29 of the Code of Federal Regulations describes the documentation that an employer must maintain in connection with employee FMLA requests. The C.F.R. states that an employer should maintain all medical histories and records in separate confidential files and should conform with the ADA confidentiality requirements. Johnson asserts that the Mermaid disclosed her medication information in violation of this provision and that she may maintain a private right of action to recover for such violation.

The Mermaid argues that the C.F.R. provision cited by Johnson is insufficient to create a private right of action under the FMLA. Neither party cites any authority supporting their position, either that there is a private right of action or there is not.

Assuming, *arguendo*, that such a private right of action exists, the regulation's explicit reference to the parallel provision of the ADA suggests that such a right of action would mirror that afforded by the ADA. As noted above, the ADA does allow an individual to bring a private right of action under the ADA for improper disclosure of confidential information, but the ADA does not create a strict liability standard; rather, an individual bringing such a cause of action must show "tangible injury." Even assuming that the FMLA creates a similar private right of action, the Court cannot construe such a right of action to be more broad than that provided by

13

the analogous ADA provision, a provision directly referenced in the regulation. Thus, absent some showing by Johnson of a "tangible injury" resulting from the disclosure of her medical information, the Court finds that Johnson cannot sustain a cause of action for the disclosure. As discussed above, Johnson has not alleged any legally cognizable "tangible injury." As a result, her claim for improper disclosure under the FMLA must be dismissed.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Strike Plaintiff's Untimely Summary Judgment Motion, Brief and Affidavits (Doc. No. 28) is **DENIED**;

2. Defendant's Motion to Strike the Affidavit of Kari Engel or to Disqualify Plaintiff's Attorney (Doc. No. 52) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The Affidavit of Kari Engel is **STRICKEN**, and

    b. Defendant's Motion to Disqualify Counsel is **DENIED**;

3. Plaintiff's Motion for Summary Judgment (Doc. No. 20) is **DENIED**; and

4. Defendant's Motion for Summary Judgment (Doc. No. 16) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The Motion is **GRANTED** as to Plaintiff's claims for discrimination under the ADA and the MHRA and as to Plaintiff's claims for disclosure of confidential information in violation of the ADA, the MHRA, and the FMLA, and these claims are **DISMISSED WITH PREJUDICE**; and

      b.      The Motion is **DENIED** as to Plaintiff's claims for retaliation under the ADA and the MHRA and as to Plaintiff's claims for violations of the FMLA.

Dated: August 28, 2002

                                                    DONOVAN W. FRANK
                                                    Judge of United States District Court